N. R. STELL AND WIFE, R. A. STELL, v. FIRST-CITIZENS BANK & TRUST COMPANY, ADMINISTRATOR D. B. N. OF J. B. PERRY; CHARLES P. GREEN, GUARDIAN OF LILLIE M. PERRY; W. H. YARBOROUGH, JR., GUARDIAN AD LITEM OF CATHERINE YOUNG; R. L. YOUNG; BROOKS YOUNG, ANNIE C. YOUNG, R. L. YOUNG, AND WILLIAM YOUNG, MINORS; H. K. PERRY, H. R. PERRY, RAYMOND PERRY, NONIE RICHARDS, BURMA FAUCETTE, MAUDE R. PRIVETTE, INA FOWLER, JOHN PERRY, L. O. PERRY, ADA PHILLIPS, R. C. PERRY, SIDDIE OAKLEY, LINWOOD JOHNSON PERRY, E. C. PERRY, CLARK PERRY, GRADY PERRY; BLAND MITCHELL, TRUSTEE, MRS. UZZIE W. MAY, ADMINISTRATRIX OF J. A. WILLIAMS, TRUSTEE, AND JOHN F. MATTHEWS, EXECUTOR OF W. C. PERRY.

(Filed 10 November, 1943.)

**1. Equity § 2—**

Laches on the part of claimant is recognized by courts of equity, in proper cases, as an available defense against stale claims. It is generally defined to mean negligent omission for an unreasonable time to assert a right enforceable in equity.

**2. Mortgages § 25: Taxation § 42—**

A person, under any legal or moral obligation to pay taxes, cannot by neglecting to pay the same and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale.

**3. Trial § 22f: Appeal and Error § 40e—**

Upon a motion for judgment as of nonsuit, C. S., 567, at the close of all the evidence, the court will consider only the evidence which tends to support the plaintiff's claim.

**4. Trial § 24: Appeal and Error § 40e—**

In a suit by plaintiff, grantor and debtor in a deed of trust on land, against defendants, holders of the debt thereby secured, for an accounting and finding of amount due, upon motion for judgment of nonsuit at the close of all the evidence, which tended to show that plaintiffs rented the lands and, by an arrangement with the holders of the debt, the rents were paid to the said holders of the debt to be applied to the debt and interest and taxes, the said holders of the debt allowing the property to be sold for taxes and becoming the purchaser at the tax sale, it was error for the court to allow the motion, on either the ground of (1) laches or (2) adverse possession under a valid tax deed.

APPEAL by plaintiffs from *Grady, Emergency Judge,* at January Term, 1943, of WAKE. Reversed.

Plaintiffs alleged that they executed two deeds of trust on their land in 1920 and 1921, to secure notes which were held by J. B. Perry, the corporate defendant's intestate, at the time of his death, and that by virtue of payments which had been made thereon the debts secured have been substantially reduced or extinguished. They pray for an accounting and for opportunity to pay the balance found due. J. B. Perry died in 1940, and this action was instituted August, 1941. The personal representatives and heirs at law of J. B. Perry were made parties.

The defendants alleged plaintiffs abandoned and surrendered the land to J. B. Perry in 1926, and that any rights they might have had were lost by laches. Defendants further alleged that J. B. Perry acquired title to the land under tax foreclosure sale and deed in 1932, and they plead seven years' adverse possession thereunder, and also the three and ten years' statutes of limitations.

On the trial the plaintiffs offered evidence tending to show that one of the notes referred to was originally given to the Bank of Youngsville, of which J. B. Perry was president and active head, and that it was assigned to Perry in 1931. The other note was made originally to Perry. Plaintiffs moved off the land in December, 1926, and thereafter rented the land to tenants. At this time the debt had been reduced to $6,100. In 1929 plaintiffs rented the land to one Russell Wall, who paid the rent to plaintiffs for one year, and after that they instructed him to pay the rent to the bank to be credited on the notes, interest and taxes, pursuant to arrangement with the bank. Subsequent to the closing of the bank the rents were paid to J. B. Perry. Plaintiffs personally paid the taxes for 1927, and subsequently the tax notices were sent by them to Wall or to Perry. Plaintiffs never knew Perry had a tax deed until so advised by their counsel in this action. Russell Wall, the plaintiffs' tenant, died in November, 1934, and Roy Wall moved on the land and thereafter paid the rent to J. B. Perry. In 1939 Roy Wall sought to buy the land, and talked to Stell and then to Perry. Stell was willing to

sell and "straighten it up," but Perry said "Stell hasn't got a Chinaman's chance."

It further appeared that in 1931 J. B. Perry took a crop lien from plaintiffs' tenant Russell Wall on crops to be grown on the land which was described in the instrument as "lands owned by N. R. Stell." In 1934 a man who wished to buy some poles from the land was by direction of plaintiff N. R. Stell sent to Perry to pay for them. Perry replied, "The amount you are paying for the poles is just too little to credit the note with." It further appeared in evidence without objection that the land was each year listed for taxation in the name of N. R. Stell, and that the tax list for 1938 shows the land listed in the name of N. R. Stell "by order of J. B. Perry."

Defendants offered evidence tending to show abandonment and surrender of the land to J. B. Perry in 1926, and continuous possession thereafter without any claim by plaintiffs. Defendants also offered tax deed to J. B. Perry, executed in 1932 pursuant to foreclosure sale for unpaid taxes for 1928. It was admitted that the proceedings for foreclosure and sale of the land for taxes were in all respects regular.

At the close of all the evidence defendant's renewed motion for judgment of nonsuit was allowed, and plaintiffs excepted and appealed.

*J. G. Mills for plaintiffs.*

*Yarborough & Yarborough, W. L. Lumpkin, W. Y. Bickett, and Thos. W. Ruffin for defendants.*

DEVIN, J. Defendants contend the nonsuit should be sustained upon two grounds: (1) laches on the part of the plaintiffs, and (2) a valid tax deed to the defendants' intestate.

1. Laches on the part of claimants is recognized by courts of equity, in proper cases, as an available defense against stale claims. It is generally defined to mean negligent omission for an unreasonable time to assert a right enforceable in equity. 30 C. J. S., 520; 19 Am. Jur., 338; Black's Law Dictionary. "Laches is such delay in enforcing one's rights as works disadvantage to another." 30 C. J. S., 520. It may be invoked as a defense to the prosecution of a claim cognizable in equity when there has been inexcusable delay in moving to enforce it, on the ground that equity will refuse aid to a stale claim when a party has slept on his rights. *Spiedel v. Henrici,* 120 U. S., 377.

In *Teachey v. Gurley,* 214 N. C., 288, 199 S. E., 83, it was said: "In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will

be applied. Hence, what delay will constitute laches depends upon the facts and circumstances of each case." Laches operated as a defense in that case for the reason that plaintiffs "waited for approximately six years after the trust was disavowed and after the property had been conveyed by the alleged trustee and until after the lips of the primary beneficiary were closed in death."

When we consider the evidence here in the most favorable light for the plaintiffs, as we must do on a motion for nonsuit, we are unable to concur in the view that as a matter of law plaintiffs have lost their right to the equitable relief sought by reason of laches. Plaintiffs' evidence tends to show that by virtue of an arrangement the rents from the land were to be paid to the holder of the notes secured by the deeds of trust to be applied to the payment of the notes, interest and taxes, and that there was no repudiation of this understanding or denial of plaintiffs' equities, unless Perry's statement to a prospective purchaser of the land, in 1939, that "Stell hasn't got a Chinaman's chance," be so construed. Furthermore, plaintiffs' evidence tends to show repeated acknowledgment of plaintiffs' title by J. B. Perry, in 1931, in 1934, and again in 1938 when he apparently directed the listing of the land for taxation in the name of N. R. Stell as owner. The facts of this case, according to plaintiffs' evidence, are substantially different from those upon which the principle of laches was held to apply in *Teachey v. Gurley, supra.* Nonsuit on this ground cannot be sustained.

2. While it was admitted that the proceedings leading up to the tax foreclosure sale and deed to J. B. Perry were in all respects regular, it also appears that J. B. Perry was the owner of the debt secured by the deeds of trust on the land, and thus was empowered by statute to pay the delinquent taxes and add the cost to his debt, and in case of foreclosure as holder of a lien he was a proper party to whom notice of the foreclosure proceedings was required to be given. *Orange County v. Wilson,* 202 N. C., 424, 163 S. E., 113. Furthermore, plaintiffs' evidence is susceptible of the inference that by an arrangement to which Perry was party, the rents from the plaintiffs' land were received in trust to be applied in part to the payment of taxes. Hence, his purchase of a tax title to the land would be regarded in equity as inuring to the benefit of the trustor, there having been no disavowal of the trust.

It was said in *Smith v. Smith,* 150 N. C., 81, 63 S. E., 177, "It is a well settled rule that a person under any legal or moral obligation to pay the taxes cannot by neglecting to pay the same, and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale; otherwise, he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the

taxes." This statement of the law was quoted with approval in *Bailey v. Howell,* 209 N. C., 712, 184 S. E., 476, and was again enunciated in *King v. Lewis,* 221 N. C., 315, 20 S. E. (2d), 305, where it was said the mortgagee's purchase at a tax sale could not be used for the purpose of asserting any right in conflict with the mortgagor's equity of redemption. *Pearce v. Montague,* 209 N. C., 42, 182 S. E., 707; *Cauley v. Sutton,* 150 N. C., 327, 64 S. E., 3; *Brantly v. Kee,* 58 N. C., 332. Nor could possession by Perry under the tax deed be regarded as adverse for the statutory period, since plaintiffs' evidence tends to show the land was continuously occupied by plaintiffs' tenants, at least up to November, 1934. Nor under plaintiffs' evidence would the statutes of limitations begin to run against the plaintiffs in the absence of repudiation of the arrangement for payment of rent, or assumption of other adverse position by Perry.

While it is true the relationship of trustor and secured creditor in a deed of trust is not in all respects the same as that of mortgagor and mortgagee, and is not such as to render presumptively fraudulent purchases by the latter from the former (*Murphy v. Taylor,* 214 N. C., 393, 199 S. E., 382; *Ferguson v. Blanchard,* 220 N. C., 1, 16 S. E. [2d], 414), under the circumstances presented by plaintiffs' evidence in this case, we think the creditor secured by the deeds of trust should not be permitted to acquire adverse title to trustor's land by virtue of tax foreclosure sale and deed when, according to plaintiffs' evidence, he was receiving the rents from the land under arrangement to apply the same in part to the payment of taxes. 19 R. C. L., 398.

The plaintiffs' evidence is susceptible of the inference that as a consequence of the arrangement by which rents were paid to Perry to be applied to certain purposes a trust relationship was thereby created, the incidents and obligations of which a court of equity would recognize and enforce. *Abbitt v. Gregory,* 201 N. C., 577, 160 S. E., 896; *Rousseau v. Call,* 169 N. C., 173, 85 S. E., 414; 65 C. J., 295.

Under the rule, on the question of nonsuit, we have considered only the evidence tending to support plaintiffs' claim. Consideration of all the evidence may determine the essential facts against them. We express no opinion as to that. But we think on this record the plaintiffs were entitled to have their case submitted to the jury.

We conclude that the learned judge was in error in allowing the motion to nonsuit, and that the judgment dismissing the action must be

   Reversed.