Howard PHIPPS, Jr., and wife, Mary N.S. Phipps, Plaintiffs–Appellants,

v.

Charles ROBINSON, Jr., and wife, Vinita G. Robinson; Ramona Wilson Hunter, and husband, William A. Hunter; John E. Dell and wife, Ann B. Dell; The Sea Gull Motel Inc.; Sybil A. Fetterroll, and husband, Charles Fetterroll; Ruby Austin Moser; Joseph Leonard Moser, Defendants–Appellees,

and

Ralph H. Hodges, Jr., as Trustee; Cooperative Savings and Loan Association, as Beneficiary; G. Irvin Aldridge, as Trustee; Marjorie A. Newton, and husband, C.C. Newton, Jr., as Beneficiaries; W.H. McCown, as trustee; Josephine Oden, as Beneficiary, Defendants.

Howard PHIPPS, Jr., and wife, Mary N.S. Phipps, Plaintiffs–Appellees,

v.

Charles ROBINSON, Jr., and wife, Vinita G. Robinson; Ramona Wilson Hunter, and husband, William A. Hunter; John E. Dell and wife, Ann B. Dell; The Sea Gull Motel Inc.; Sybil A. Fetterroll, and husband, Charles Fetterroll; Ruby Austin Moser; Joseph Leonard Moser, Defendants–Appellants,

and

Ralph H. Hodges, Jr., as Trustee; Cooperative Savings and Loan Association, as Beneficiary; G. Irvin Aldridge, as Trustee; Marjorie A. Newton, and husband, C.C. Newton, Jr., as Beneficiaries; W.H. McCown, as trustee; Josephine Oden, as Beneficiary, Defendants.

Nos. 87–3097, 87–3098.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1988.

Decided Oct. 11, 1988.

William Glenn McNairy, S. Leigh Rodenbough (James T. Williams, Jr., Randall A. Underwood, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., on brief), for plaintiffs-appellants.

Roy A. Archbell, Jr. (Shearin & Archbell, Kitty Hawk, N.C., on brief), for defendants-appellees.

Before WIDENER and WILKINSON, Circuit Judges, and BULLOCK, District Judge for the Middle District of North Carolina, sitting by designation.

WIDENER, Circuit Judge:

This claim arises out of a dispute over real property claimed by several parties under three original land grants. The property has been divided into six lots, six separate defendants disputing the plaintiffs' claim of ownership of all six parcels. The plaintiffs commenced six separate suits. Four suits were framed as actions to quiet title, with the remaining two as actions in ejectment. The actions were consolidated in the district court. The district court granted the defendants' motions for summary judgment, finding the actions of the plaintiffs barred by laches. All parties appeal. The plaintiffs claim that the district court erred in holding that the defendants had established their laches defense as a matter of law. The defendants have cross-appealed, contending that the district court erred in denying their motions for summary judgment on the grounds of res judicata. We hold that laches is not an available defense in two of the cases and that summary judgment should not have been granted for that reason in the others, and we vacate and remand for further proceedings. On defendants' cross-appeal regarding res judicata, we affirm.

The property in dispute is located on Hatteras Island in Dare County, North Carolina. The plaintiffs claim a one-twelfth undivided interest (the other undivided interest apparently being claimed by family members) under grant No. 17465 from the State of North Carolina in 1910 to Georgia A. Gaskins. In 1911, the land encompassed by the grant was conveyed by the Gaskins to C.E. Brisbin.

John S. Phipps acquired the Brisbin property in 1933. Upon his death, the land went to various trusts and family members. Howard Phipps, Jr., one of the plaintiffs, purchased his interest in the property in 1969 from Princeton University, which had acquired the interest by donation from his cousin.

The defendants claim ownership of the six tracts in dispute as a part of a larger tract known as the Rollinson tract. They claim title under colonial grants in 1711–12 and 1755. Andrew S. Austin, Sr. acquired the Rollinson tract through conveyances in the late 1950's and early 1960's. All his interest in the tract passed by will to his five children after his death in 1962. The land was divided into six parcels in 1975, with one parcel allocated to each child of Austin, Sr. The remaining parcel was conveyed to Wallace McCown as an attorney's fee for his representation of the Austin family in a prior suit involving the same plaintiffs and property and for other services. The defendants in the present case claim their interest in the property from the descendents of Austin, Sr. or McCown. And, in all events, the parties agree that the lands claimed by the plaintiffs and defendants are the same lands.

After the death of John S. Phipps, the family members lacked specific knowledge of their holdings regarding the Hatteras properties. They hired local attorneys to identify their Dare County properties. These attorneys were further retained to defend adverse claims against the properties and to negotiate favorable conveyances of the properties.

The first suit relevant here involving the property was filed in the North Carolina state court on behalf of the Phipps on August 25, 1962.[1] A.S. Austin, through whom all of the defendants claim, was a party; he died after the suit was filed but before it was decided. The purpose of the suit was to quiet title to the lands within the outer perimeter of the Gaskins' grant. The Referee, however, granted the motions

---

1. The defendants in the suit were Cortez Gaskins, A.S. Austin, Lee Robinson, M.L. Burrus, Mrs. Ursa Stowe, Millard Ballance, Carlos Oden, Perry Austin, Bernice Ballance, Roy Gaskins, Fred Peters, George H. Hine, Mrs. Julia R. Tandy, Edgar Styron, E.R. Midgett, and Lee Peele.

for nonsuit filed by each of the fifteen defendants at the close of plaintiffs' evidence. The report of the Referee, which concluded that the Phipps had presented insufficient evidence, was adopted in its entirety by the Superior Court. The judgment of nonsuit entered against the Phipps was upheld on appeal by the North Carolina Court of Appeals. *Phipps v. Gaskins*, 8 N.C.App. 585, 174 S.E.2d 826 (1970).

During that litigation instigated by the Phipps in 1962, all the lots in dispute here remained vacant and unimproved. Four remain so to the present. However, on one lot, a vacation cottage was constructed which was commenced in 1983 and completed in 1984. During the construction of that structure on the land, plaintiffs' counsel sent notice by certified mail that plaintiffs claimed ownership of the land. The final tract is claimed by the owners of the Sea Gull Motel. Though the original buildings that comprise the motel are not on the property in dispute, the latest addition is. The addition was constructed in 1978–79.

After the termination of the prior litigation over the property in 1970, the Phipps, on the advice of Lawyers Title Insurance Company, retained Mr. McCown to represent their property interests on Hatteras Island. McCown had previously represented several defendants in the prior property dispute, including A.S. Austin, Sr., and he informed the Phipps, referring to the 1962 case, that they either could not, or would find it difficult to, establish title under the Gaskins' grant of 1910. Although the Phipps were aware that McCown had represented Austin in the previous suit, they did not know that McCown had received from the Austins an interest in one of the tracts of the Austin land which was disputed.

The Phipps retained new counsel in 1982 to represent their interest in the properties, following which the several actions here were filed on behalf of the Phipps, to quiet title to the four unimproved tracts and as actions in ejectment against the two remaining. The decision of the district court in those six cases is the basis of this appeal.

To recount, the district court held that the defense of res judicata was not available to the defendants but that the defense of laches was, and decided that the defendants had established the defense of laches.

■ We consider the res judicata question first.

In this diversity case, North Carolina law governs the preclusive effect to be given to the judgment of a North Carolina court. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). In North Carolina, in order that a judgment in a former case may be held to be res judicata, there must be identity of parties, of subject matter and of issues. *Carolina Power & Light Co. v. Merrimack Mut. Fire I. Co.*, 238 N.C. 679, 79 S.E.2d 167, 175 (1953). The parties agree that there is identity of parties, subject matter and issues. The only question is whether there has been a judgment in a former case which will bind the parties.

The judgment of a court, which defendants argue is res judicata, is *Phipps v. Gaskins*, 8 N.C.App. 585, 174 S.E.2d 826 (N.C.App.1970). In that case, the Phipps were the plaintiffs, and these defendants or their predecessors in title were the defendants. We have considered such parts of the record in *Phipps v. Gaskins* as were presented to us, including especially the report of the Referee, the decision of Superior Court and the decision of the Court of Appeals of North Carolina.

In that case, the Referee's decision (a report which was confirmed by the Superior Court) was based on a motion for an involuntary nonsuit made by the defendants at the close of the plaintiffs' case. It was granted on account of an insufficiency of evidence. The insufficiency was that the plaintiffs had failed to prove the location of exceptions which were stated in the Gaskins' grant of 1910, and had also failed to prove that the outer boundaries of the grant closed under the evidence, a measurement was missing. Thus, the plaintiffs simply failed to prove that the grant under which they claimed included the very lands in dispute.

In a similar case in North Carolina over the title to land, *Walker v. Story*, 256 N.C. 453, 124 S.E.2d 113 (1962), the Court held that a previous judgment of involuntary nonsuit between the same parties was not res judicata when the judgment upon which the plea of res judicata was based had been "... affirmed on the ground that the evidence offered by plaintiff was insufficient to establish his alleged title and right to possession." In so holding, the court stated that a motion for judgment of involuntary nonsuit was equivalent to a demurer to the evidence, and that upon it being sustained for insufficiency of evidence, "... the plaintiff is permitted to institute a new action and offer additional evidence to overcome such deficiency. If, upon the trial of the new action, 'it appears to the trial court, and is found by such court, as a fact, that the second suit is based upon substantially identical allegation and *substantially identical evidence*, and that the merits of the second cause are identically the same, thereupon the trial court should hold that the judgment in the first action was a bar or *res adjudicata*, and thus end that particular litigation.'" (Italics are the Court's) 124 S.E.2d at 114. The court continued that whether the judgment in the prior action was a bar to the present action depended on whether the evidence presented by the plaintiff in the second action was substantially the same as that offered by the plaintiff in the first. Since neither the evidence offered at the trial of the prior action nor the evidence the plaintiff proposed to offer in the second action was before the Court, the court reversed the trial court which had sustained the plea of res judicata on the pleadings. Its action was premature, the Court said.

We see no substantial difference between *Walker* and the case at hand. While it is true that the record in *Phipps v. Gaskins* in the North Carolina courts was available, the plaintiff by affidavit, which at this stage of the proceeding must stand, maintains that it can overcome the deficiencies in its proof in *Phipps v. Gaskins*. Thus, the district court correctly decided that a plea of res judicata should not be allowed, and we add especially at that stage of the proceeding. Whether such a plea might be successful upon a trial of the action is a question for another day and is not before us now.

■ In discussing the defense of laches, we have the preliminary question of whether or not to apply a decision of the North Carolina Court of Appeals, an intermediate appellate court. Defendants rely on an opinion of that court which they say would permit the defense of laches to apply in defense of actions brought in ejectment. Plaintiffs argue that two earlier cases from the North Carolina Supreme Court, which were not mentioned in the decision of the Court of Appeals relied on by defendants, hold that laches may not be asserted as a defense to actions brought in ejectment. Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), of course, we must apply the law announced by the highest court of North Carolina if the question has been decided by that court. If the question has not been decided, then we must apply what we "... find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967). And the Court of Appeals of North Carolina is among the "other courts of the State" involved in this case. Under these rules, we analyze the North Carolina cases depended upon by the parties.

There are five North Carolina appellate cases which most directly bear on the question at hand, four from the Supreme Court and one from the Court of Appeals. They are, in chronological order: *Ramsey v. Nebel*, 226 N.C. 590, 39 S.E.2d 616 (1946); *Hughes v. Oliver*, 228 N.C. 680, 47 S.E.2d 6 (1948); *Sparrow v. Dixie Leaf Tobacco Co.*, 232 N.C. 589, 61 S.E.2d 700 (1950); *Scott Poultry Company v. Bryan Oil Company*, 272 N.C. 16, 157 S.E.2d 693 (1967); and *McRorie v. Query*, 32 N.C.App. 311, 232 S.E.2d 312 (1977).

*Ramsey* was a suit in ejectment between the owners of adjoining lots. One lot owner had placed improvements on the other's land, and the other sued on account of

improvements placed upon his lot by the neighbor. The improver defended on the ground that the plaintiffs were "estopped to deny the right and title of defendants" on the ground that the plaintiffs had had actual knowledge and frequent observation of the defendants' operations. Although the first of the improvements had been placed on the land some 12 years prior to filing suit, the Court affirmed a judgment for the plaintiffs, and the Court stated that "Whatever may have been plaintiffs' moral or legal duty in the matter—and we do not imply that there was—its infraction could not result in a loss to plaintiffs of their land." 39 S.E.2d at 618. The Court continued that "The statutes fixed the time within which the owner of the true title must take action against those committing acts implying a claim of ownership, either under color of title or by adverse possession [citations omitted] and this cannot be abridged on the theory advanced by appellants." 39 S.E.2d at 618. This would seem to be a fairly clear holding that laches may not be available as a defense in an action in ejectment, but the defendants argue that the stated ground in the opinion is estoppel, not laches, and that the defenses are different. We do not agree with this theory, for *Sparrow,* 615 S.E.2d at 704, *Hughes,* 47 S.E.2d at 11, and *Creech,* infra, 24 S.E.2d at 647, speak of estoppel by laches, or words of similar import, showing that the North Carolina Court, not unreasonably, equates the defense of laches to estoppel in such cases, so we think that *Ramsey* is a fairly clear holding for the point as advocated by plaintiffs.

The next case is *Hughes v. Oliver.* *Hughes* was a case in which the son of a mortgagor, who apparently had inherited his father's interest, sued in ejectment the son of a mortgagee, who had purchased the land in question at a foreclosure sale, and had occupied the same, claiming under the deed given in the foreclosure for some twelve years prior to the institution of the case at hand. The Court, in apparently three alternate holdings, held that a 7–year statute of limitation for adverse possession under color of title had run, that a 10–year statute for the redemption of a mortgage

had run, and that the plaintiffs were guilty of laches. But the Court did not mention *Ramsey* and its holding that estoppel should not apply in defense of actions in ejectment. Neither did it discuss the question of whether or not the defense might apply in a proper case; it merely applied the defense. The defendants argue that the holding of the Court in *Hughes* indicates that the defense of laches does apply in actions in ejectment, and, if there were nothing else, this would at least be persuasive.

The next case was *Sparrow v. Dixie Leaf Tobacco Co.* In that case, the plaintiff owned the underlying fee simple estate in property in which a railroad had acquired a right of way by condemnation. The right of way was not in fee simple but in the nature of an easement. The railroad had built some warehouses on its right of way which it leased to the defendant tobacco company for the general use of the tobacco company for the storage, processing and shipment and reshipment of tobacco, which had commenced in 1936–38 and had been continuous for some 14 years until the institution of the suit in ejectment by the owner of the underlying estate in 1949. Although the railroad and others had done business thereupon, contrary to the terms of the easement, continuously since 1936, without protest or objection as to the construction of the buildings or the occupancy thereof, or the collection of rents by the railroad, the Court reversed a judgment for the defendant. It held that the railroad had only the right to use the easement "necessary for the operation of its road and to carry on its business as a common carrier." 61 S.E.2d 702. The Court held that the use by the tobacco company for general purposes was not in furtherance of the business of the railroad, and the fact that the railroad may have been incidentally benefited by picking up additional shipments was not sufficient to convert the warehouse "into railroad use." 61 S.E.2d at 703–04. The defendant contended that because the various owners of the underlying estate had had actual knowledge and frequent observation of the

use of the buildings on their premises for a period of 14 years and had not protested, such laches estopped the plaintiffs from claiming title to the land and denying title of defendants. The Court described the defense as "estoppel by laches" and held "But these facts are not sufficient to work an estoppel." 61 S.E.2d at 704. It reasoned that the possession of the railroad was the possession of the tobacco company, so adverse possession had not been asserted, but, even if it had, that, since there was no color of title, a 20–year limitation period applied. For its holding with respect to laches and estoppel, the Court relied upon *Ramsey*. It did not, however, discuss the question of whether or not laches or estoppel, equitable defenses, may be applied in the action at law of ejectment in a proper case.

The latest case from the Supreme Court is *Scott Poultry Company v. Bryan Oil Company*, decided in 1967. In *Scott*, the plaintiff alleged that the purpose of the case was to remove a cloud from title. The plaintiff alleged that, although it was the owner of the land in dispute and entitled to the immediate possession thereof, the defendant claimed an estate or interest in the land by virtue of an invalid deed. The defendant's response was that its deed was valid and that it was in lawful possession of the land. Initially, the Court stated that it had to decide whether the action was one to remove a cloud upon title or a suit in ejectment "in order to determine the defenses available to defendant." 157 S.E.2d at 695. The Court decided that the nature of an action was not determined by what either party calls it but by the issues arising out of the pleadings. Because the defendant was in actual possession and plaintiff sought to recover possession, the Court decided that "the pleadings make out a cause of action in ejectment." 157 S.E.2d at 696. The defendant had pleaded two statutes of limitation, estoppel and laches, as defenses.

Because all the facts relative to all the issues raised by the pleadings had not been admitted by the parties and because the plaintiff's evidence and the hearing held before the trial court on whether pleas in bar should be sustained without a trial was insufficient to admit of only one conclusion, the Court held that the trial court "... should have submitted the proper issues to the jury for decision." 157 S.E.2d at 698. It then concluded its opinion with this paragraph:

> "Ordinarily, equitable defenses such as estoppel and laches are not recognized as pleas tenable in a court of law, the court being governed by the statute of limitation. Whether this rule has been strictly followed, we need not inquire, since this cause must be remanded for other reasons." 157 S.E.2d at 698.

From these four cases, we conclude that, in the one case in which the issue was explicitly discussed in the opinion of the Supreme Court of North Carolina, *Scott Poultry*, and the case in which the issue was apparently raised, *Ramsey*, so far as that Court is concerned, the rule is that the equitable defense of laches may not be raised as a defense in an action at law of ejectment. It is true that *Hughes* did apply the defense of laches in an ejectment action, but *Hughes* did not mention *Ramsey*. Neither did *Hughes* discuss the question; it merely applied the defense. It is also true that *Sparrow* refused to apply the defense of laches in an action of ejectment, but *Sparrow* did not discuss the question of whether the defense might be applied in a proper case. In all events, the last word of the Supreme Court of that State is *Scott Poultry Company* which we construe as not permitting the defense, and we follow *Scott Poultry* and *Ramsey*.

*McRorie v. Query* was a case in the Court of Appeals in an action in ejectment in which the court held, over opposition, that the defense of laches might and did apply. It relied on *Hughes* for this proposition. The opinion also referred to *Scott Poultry* under a "see also" designation. But it did not mention either *Ramsey* or *Sparrow*, and, if the court was depending upon, rather than distinguishing, *Scott Poultry*, with much reluctance we simply think its reliance was misplaced. We should not leave the subject without noticing that *Young v. Young*, 43 N.C.App. 419,

259 S.E.2d 348, 349–50 (1979), although it mentioned *McRorie*, agrees with our construction of *Scott Poultry*.

Thus, we are of opinion the equitable defense of laches may not be asserted as a defense in the two cases here which are actions in ejectment, those against the owners of the Sea Gull Motel and the Hunter defendants who have erected a summer house on the property.

The discussion which follows refers to the four vacant tracts of land, we having decided above that the defense of laches was not available in the two cases brought in ejectment concerning the two tracts upon which improvements had been erected. The parties have treated the four tracts as vacant and unoccupied, and so do we, although there is some evidence that some blocks of one kind or another may have been put upon one of the tracts. We emphasize that our opinion is based on the granting of summary judgment in the case and does not indicate our opinion of what the result of the case might be upon a trial.

▪ The district court applied the doctrine of laches to defeat the four suits brought to quiet title to the four lots of land which were vacant. It gave as its reasons the plaintiffs' delay in asserting their rights, with prejudice caused by the delay. The prejudice, said the district court, was the death of some witnesses who testified during the case of *Phipps v. Gaskins* in the state court, the increase in value of the property during the delay between the decision of the Court of Appeals and the filing of these cases some 15 years later, the payment by the defendants of real estate taxes on the land, and of attorneys' fees and surveying expenses in connection with the division of the property, which includes closing expenses for the purchase of two tracts from those who took on account of the death of A.S. Austin. The court also stated that, while knowledge by the defendants of the plaintiffs' claim did not enter into the case, the defendants had no reason to believe the plaintiffs would challenge their property rights.

So far as knowledge is concerned, we think that all of the parties to this case are hard pressed to deny that in law they had knowledge of the claims of the other side. Admissions in pleadings are competent evidence, even admissions of attorneys of record. Although the admissions are in another action, they are declarations of the party. *Middleton v. Hunter*, 195 N.C. 418, 142 S.E. 325 (1928). And a deed used by a party in a previous case as an assertion of a boundary line has been held to be competent evidence in a subsequent suit against the party who offered it in the first case. "The declarations or confessions of the person making them are evidence against such person and all claiming under him by a subsequent title and for the plainest reasons." *Alsworth v. Richmond Cedar Works*, 172 N.C. 17, 89 S.E. 1008 (1916). In the case before us now, reference to the state record in *Phipps v. Gaskins* shows that the Phipps' claimed in that case "that the claims of title of the defendants are inferior to the title of the plaintiffs," and also that "... the said inferior claims of defendants cast a cloud upon the title of the plaintiffs...." Turning to the answer of the estate of A.S. Austin, in the case of *Phipps v. Gaskins*, it shows that the claim of the estate was "that the claims of title of the plaintiffs are inferior to the title and interest of the defendant A.S. Austin, Sr., deceased," and that "... the said inferior claims of the plaintiffs likewise case [sic] a cloud upon the title and interest of the defendant A.S. Austin, Sr., deceased...." So, at this stage of the proceeding where we must take the pleadings of the parties in the case of *Phipps v. Gaskins* at face value, the plaintiffs knew of the defendants' claims to the land and the defendants knew of the plaintiffs' claim to the land. Whatever bearing knowledge may have on the controversy at hand, so far as the record before us now is concerned, it must be considered that both sides had knowledge of the claims of the other.

The same may be said of delay. Whatever delay the plaintiffs were guilty of in asserting their claim, the defendants were equally guilty. The parties on either side could have brought litigation to establish

their title and right to the land in 1970, immediately following the decision of the Court of Appeals in *Phipps v. Gaskins*, but neither side did. Again, so far as this record is concerned and so far as delay may enter into the decision, all of the parties to the case delayed until plaintiffs brought the present cases.

Laches in cases of equity is a defense available against those claims which may be stale. It is generally defined to mean negligent omission for an unreasonable time to assert a right enforceable in equity. *Stell v. First Citizens Bank & Trust*, 223 N.C. 550, 27 S.E.2d 524, 526 (1943). The Court also pointed out that where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied. Hence, the Court stated, what delay will constitute laches depends upon the facts and circumstances of each case. 27 S.E.2d at 526, 527.

Also to be remembered is that equity follows the law in North Carolina. *Town of Zebulon v. Dawson*, 216 N.C. 520, 5 S.E.2d 535 (1939); *Streater v. Bank of Cape Fear*, 55 N.C. 27 (1854). Where an action is barred by the applicable statute of limitations, the question of laches becomes immaterial. *Parker v. First Citizens Bank & Trust*, 235 N.C. 326, 69 S.E.2d 841, 846 (1952). "... [T]he tendency is to measure laches by the pertinent statute of limitations whenever the latter is applicable to the situation and not to regard the delay of the actor to assert the right within that period effective as estoppel, unless upon special intervening facts demanding that exceptional relief." *Creech v. Creech*, 222 N.C. 656, 24 S.E.2d 642, 647 (1943).

There being no dominion or control asserted over any of the four vacant lots other than the payment of taxes by the defendants, and the record indicates that the plaintiffs may well have paid the taxes also, the subdivision of the lands of A.S. Austin by his children, with expenses attendant thereto, and the sale of two of the lots, with expenses attendant to the sale,

between the time of determination of *Phipps v. Gaskins* and the filing of these suits, are the only intervening facts involved in the case. Those facts are not nearly so favorable to the defendants as the facts in *Sparrow* where the plaintiffs observed for a period of 14 years the use of the premises contrary to the terms of the easement on account of which the land was occupied by the defendants, yet the Court still held: "... these facts are not sufficient to work an estoppel." 61 S.E.2d at 704.

In our case, as it appears to us now, and assuming both plaintiffs and defendants can prove their assertions, so far as the four vacant lots are concerned, we have the plaintiffs claiming under the *Gaskins* grant under various mesne conveyances, and we have the defendants claiming under the colonial grants under various mesne conveyances. The plaintiffs and the defendants claim the same land, and apparently the grants interlock. Neither the plaintiffs nor the defendants have ever taken possession of the land. We do not count the payment of taxes as any more than an ordinary incident of the ownership of realty, and, in any event, it is probable that both the plaintiffs and the defendants have been paying taxes on the same property. The same may be said for the increase in value. While it is true that in some circumstances an increase in value may be considered prejudice, causing an application of laches, in this case it was due to no act of any of the parties, and, so far as the record shows, we think we are safe in supposing it was occasioned only by a general increase in land values in that community. While it is true that several witnesses have died who testified in the case of *Phipps v. Gaskins*, the plaintiffs point out, without refutation, that only two of them were Austin's witnesses. We simply do not believe that *at this stage of the proceeding* the record shows sufficient special intervening facts to demand the extraordinary relief of laches. There has been, due to lapse of time, no "change in the condition of the property or the relations of the parties." *Stell*, 27 S.E.2d at 527. Neither the plaintiffs nor the defendants have made any use of the

land in the intervening years. Neither the plaintiffs nor the defendants have taken any action with respect to the property upon a reasonable reliance on the inaction of the other.

We emphasize that we do not express an opinion upon what the result may be upon a trial and that we do not express any opinion upon the application of the various statutes of limitation in a suit to quiet title.

The judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

No. 87–3097—VACATED AND RE-MANDED.

No. 87–3098—AFFIRMED.