*A. C. Stone,* for the defendant.

*C. A. De Courcy,* for the plaintiff.

---

SOPHIA J. PEIRCE *vs.* BOSTON & LOWELL RAILROAD CORPORATION.

Middlesex. Nov. 10, 1885. — April 16, 1886. DEVENS & GARDNER, JJ., absent.

If a railroad corporation takes land for depot and station purposes, under the St. of 1874, c. 372, § 60, and actually uses the land for such purposes, although it allows the station-master, in consideration of his services and the payment of a certain sum, to maintain a boarding-house, stable, and piggery upon, and to cultivate, a portion of the premises, it does not disseise the owner of the land, and he cannot recover the same in a writ of entry.

WRIT OF ENTRY, dated May 17, 1883, to recover a parcel of land in Concord. Plea, *nul disseisin,* with a disclaimer of any title to the demanded premises except an easement therein. Trial in the Superior Court, without a jury, before *Pitman,* J., who reported the case for the determination of this court, in substance as follows:

The demandant was the owner of the premises described in the writ, and of other large tracts of land in the neighborhood. She had her home place, consisting of a dwelling-house and a barn within a short distance of the demanded premises. The tenant succeeded to all the rights and duties of the Middlesex Central Railroad Company, which corporation on January 1, 1879, filed a location of an extension of its railroad in the town of Concord, and took thereby about three acres of the demandant's land. On October 31, 1879, said corporation, under the St. of 1874, c. 372, §§ 58, 60, the county commissioners having prescribed the limits thereof, took and filed a location upon about two acres more of the demandant's land, adjoining the foregoing, for depot and station purposes, which are the premises described in the writ. Damages for each of said takings were thereupon duly assessed and paid.

The tenant thereafter built, on the most westerly end of the two acres so taken for depot and station purposes, a large building three stories high, with a cellar. This building was immediately opposite the main entrance of the state prison, and access to the two upper stories thereof was had through a large central door opening on the southerly side of the building towards the prison. These two stories contained seventeen chambers. The ground floor contained a room at the westerly end, opening, on the northerly side, on to a platform adjoining the track of the railroad, and, on the southerly side, on to the highway. This room was adapted for and intended to be used as a waiting-room for passengers ; adjoining it was an office for the station-master, and a toilet-room for ladies. An entry led from the waiting-room into two large rooms, connected by folding-doors, in the centre of the building, and to the east of these was another small room for a carving-room, and beyond this a kitchen. The tenant provided the furniture for the waiting-room and office, fitted the waiting-room with a stove, and connected the rest of the building with a furnace in the cellar, but did not provide the other rooms in the building with any furniture, fixtures, or appliances. On the easternmost end of said two acres, the tenant erected an engine-house, fitted to house three locomotive engines. Near the first-mentioned building, the tenant erected upon said lot a stable, with accommodations for five horses and for the

storage of carriages and hay, and, adjoining the stable, a piggery. There was not, at the time of the erection of said buildings, nor has there been since, any tavern or other place where passengers over said railroad could obtain meals, lodging, or other accommodations, within about two miles of said building, which was at the terminus of the railroad.   Since January 24, 1880, the tenant has occupied the waiting-room, the office, and the toilet-room of the first-named building for depot and station purposes connected with its railroad.   It has used the engine-house for the purpose of housing engines.   The occupation of said two acres other than as above stated has been as follows: since January 24, 1880, the tenant has employed a depot-master, whose duty was to attend to the passenger, freight, and telegraph business of the railroad at that place, and who gave his services, which were worth from $30 to $33 per month, and $200 in cash each year, and in return therefor was given by the tenant the whole use, income, and improvement of those portions of said first-named building not used for depot purposes as above stated, and the use for garden purposes of about one acre and a quarter of the said two acres, and the use of said stable and piggery.   The depot-master furnished the seventeen chambers with beds and furniture, the two central rooms on the ground floor with chairs and tables, and the kitchen with its furniture, and has had an average of twenty lodgers and boarders, more or less permanent, a large proportion of whom were officers and instructors in the state prison and their families, and some of whom, from time to time, were employees of the railroad company.   Regular meals were furnished daily without reference to the times of arrival or departure of trains.   There were no special appliances for transient travellers to obtain meals.   The railroad company furnished the coal for the furnace.   The stable had two signs towards the highway, one "Hotel Stable," the other "Livery Stable."   This stable was erected in the early summer of 1883.   The depot-master has kept there two horses to let for hire, and has baited such transient horses as, from time to time, came there, both for persons who visited the prison, and for those who took trains on the railroad.   He has kept nine pigs in the piggery, and, to a limited extent, has cultivated and taken crops from the land.   For four months in the summer of 1883, the engine-house was partially

occupied by contractors to construct waterworks for the town of Concord, who brought cement and sheet-iron tubes over the railroad as freighters, and worked up the cement and lined the tubes for water-pipes in said engine-house, for which use of the engine-house they paid the tenant $75.

The gross receipts for passenger and freight business at this station have averaged about $175 per month since its occupation, and the passenger travel has been very small.

After the demandant had offered the evidence heretofore recited as to the rents and profits received by the tenant from the use of the building first named, the tenant was permitted, against the demandant's objection, to show that the building cost $6275, including the furnace.

The judge ruled that the tenant had only an easement in the land, and not a freehold estate, and that its right of occupation was limited to such use of the premises as was warranted by its charter and the statutes, and was reasonably necessary to its exercise of the privileges and functions thereby conferred; found as a fact that the tenant had exceeded the lawful use of the demanded premises, and had asserted rights in and done acts upon the premises not justified by the authority given it as aforesaid; found that the plea was falsified, and that the demandant was entitled to a qualified judgment, subject to all rights of the tenant under its charters and locations; and ruled that the demandant was entitled to recover, as rents and profits since January 24, 1880, the clear annual value of the land, without any buildings thereon, subject to the right of the tenant to its exclusive possession for railroad uses under its charter and locations; and assessed the rents and profits at $103.

If the facts reported did not, as matter of law, authorize any judgment for the demandant, judgment was to be entered for the tenant; if, as matter of law, any change should be made in the form of the judgment indicated, such form was to be ordered as the court should see fit; and, if there was no error, judgment was to be entered on the finding.

*S. Hoar*, for the demandant.

*A. A. Strout & W. H. Coolidge*, for the tenant.

W. ALLEN, J.   The tenant has all the rights in the demanded premises which are given to a railroad corporation in land taken

for depot and station purposes, under the St. of 1874, *c.* 372, § 60 (Pub. Sts. *c.* 112, § 91); and the demandant has all the rights of the owner in fee from whom the land was so taken. The tenant has disclaimed all title except to an easement, and thus admitted of record all the title which the demandant has. So far as affects the title, it is immaterial whether judgment on this issue be for the demandant or for the tenant. If, however, the demandant can show that she was in fact disseised by the tenant, she will show that the writ was rightly brought, and will be entitled to costs of the suit, and may recover damages for mesne profits.

It was decided in *Locks & Canals* v. *Nashua & Lowell Railroad*, 104 Mass. 1, that a railroad corporation might disseise the owner of land over which its road was located, by doing acts upon the premises not justified by its rights under its location, and which implied a claim of title, or required a title for their justification. The court say: " Where there is a right which authorizes the party defendant, for certain purposes, to disturb the soil or occupy the land, acts done in apparent conformity therewith, or even of an equivocal nature, will be referred to that special right; although, in the absence of such authority, the demandant would be entitled to regard the acts as an assertion of title and a disseisin of himself. . . . . In respect to lands taken by railroad corporations, although the discretion of the directors is unlimited, as to the mode and extent of the use or occupation, for the purposes for which the corporation was created, yet it is definitely limited by those purposes. Any uses of the land confessedly for other purposes, or not apparently for purposes permitted by its charter, are not protected by its authority." We have only to adapt the rule of that case to the facts of the case at bar, and inquire whether the acts of the tenant were for purposes other than those for which it might lawfully occupy the land, and amounted to an assertion of title and an assumption of seisin in fee.

The St. of 1874, *c.* 372, § 58, (Pub. Sts. *c.* 112, § 88,) provided that a railroad corporation might lay out its road not exceeding five rods in width. This gave to the corporation the absolute right to impose the easement of a right of way upon the land, but no authority to take the land itself. It is the right acquired by

the laying out of the road under this provision, of which it was said that it, "though technically an easement, yet requires for its enjoyment a use of the land, permanent in its nature, and practically exclusive." *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574, 580. The only limit to the use which the corporation may make of the land is, that it shall be a use authorized by its act of incorporation. Within that limit, the manner in which the land shall be used and occupied is in the discretion of the corporation. *Locks & Canals* v. *Nashua & Lowell Railroad, ubi supra,* and cases there cited.

But the rights of the tenant in the demanded premises are not merely those acquired by the location of its road. The section of the statute already referred to further authorizes the corporation, for the purpose of cuttings, embankments, and procuring stone and gravel, and for depot and station purposes, to "purchase or otherwise take," in the manner afterwards provided, as much more land as may be necessary for those purposes. Subsequent sections provide the manner in which such land may be taken; if the corporation is not able to agree with the owner, it may apply to the county commissioners, who shall prescribe the limits within which it may be taken, and the corporation shall file a location of the land taken.

The statute indicates a more exclusive occupation of the land taken for materials or for station purposes, than of the five rods in width on which the road is laid out. The latter gives directly only the right of way over the land; the right to exclude the owner from the land, to use the land for constructing and maintaining the road-bed, to erect upon it shops and buildings used in the business of a common carrier of persons and goods, are incidental to the right of way. The former, the taking of land for materials and for station purposes, directly contemplates the exclusive occupation and appropriation of the land, as shown by the manner of the taking and the nature of the use for which it is taken; it is to be purchased or otherwise taken; if not purchased, it cannot be taken until the county commissioners have prescribed its limits, and, when taken, it is taxable to the corporation; and the uses for which it is expressly taken require a possession as exclusive and practically as absolute as belongs to a seisin in fee.

It may be assumed that the fee in land thus taken remains in the owner from whom it was taken, and that the corporation, by ceasing to use it for the purposes for which it was taken, and appropriating it to uses not included in its franchise, may become seised of the fee, and thus disseise the owner, as was decided, in regard to land over which a railroad was laid out, in *Locks & Canals* v. *Lowell & Nashua Railroad, ubi supra.* In that case, the court said: " The occupation of the buildings upon the demanded premises for the general purposes of trade and mechanical or manufacturing business, by lessees having no other connection with the operations or interests of the corporation than as its tenants paying rent, and the conversion of those buildings by the corporation from their original design into private stores or shops for the purpose of so changing their use, placed them beyond the scope of the corporate purposes and functions," and involved an assumption of ownership, and made the corporation tenant of the freehold by disseisin.

No occupation of land taken for depot and station purposes, which is not inconsistent with its use for such purposes, can be evidence of a claim to the fee ; and any occupation of it which is concurrent and consistent with and does not exclude its occupation for station purposes must be presumed to be under that right.   The manner in which it shall be used for the designated purposes is in the discretion of the corporation, and is no concern of the landowner.   Even if the corporation exceeds its franchise in the manner of such occupancy, it does not thereby disseise the owner of the fee.

If a railroad corporation fits its station-house with conveniences for furnishing lodging and food necessary for the comfort of its passengers, it does not claim the fee of the land by allowing others than passengers to use them ; it is not a claim of the fee in the land that it does not distinguish between the public and its passengers in the use of the refreshment table or news stand or telegraph office kept there.   The building is none the less a station-house, and the fitting it for use, and providing conveniences for passengers and the public alike, is an incident of its use for the business of the corporation, and a mode of inviting passengers to its road ; and, in doing it, the corporation asserts no right except to maintain a station-house and what it

deems incidental to that.  It may exceed its corporate rights in the use of its station-house, but it does not thereby claim the fee in the land on which it stands.

When the tenant came into possession of the franchise, the road was located, and the station grounds of two acres were taken at the terminus of the road.  What the prospective business of the road was does not appear, but it does appear that its present dependence for business is upon the state prison.  Whatever passenger travel there is to be, for a time must be drawn by that, and the amount of it may depend largely upon whether it is attracted or repelled by the conveniences furnished to travellers by the corporation, for there are none furnished except by it; and the prospective business of the road, and the increase of population and business about it, might depend upon the conveniences furnished at the station to travellers and sojourners. The whole demanded premises were occupied as the station, and furnishing food, lodging, horse-keeping, and horse-hire; and allowing buildings upon it to be used for a boarding-house and a stable, and some of the land to be cultivated, all for the convenience of its passengers and others, in order to increase the business of the road, were incident to its business as a passenger carrier, and consistent with its occupation for the purposes for which it was taken, and with a claim to occupy for those purposes.

Another way of stating the question is, Would the tenant acquire the fee by twenty years' continued occupation?  It is actually using the premises as its station grounds, and has its tracks and its engine and passenger-house upon them.  If, after twenty years of such occupation as has been shown, it should wholly abandon the use for railroad purposes, and then should claim the fee by disseisin, the obvious answer would be, that it occupied them for depot and station purposes under the taking, and not as owner in fee.

It seems clear that the demandant has not the right of possession of the premises.  The tenant is in possession in the exercise of a public franchise, with which the demandant has no right to interfere, and it is difficult to see how there can be a disseisin of the demandant while such occupation continues.  In *Locks & Canals* v. *Nashua & Lowell Railroad, ubi supra*, there had been an abandonment of the use of the land under the franchise; not a

technical abandonment, — because, as was said, a public franchise cannot be abandoned, — but an entire disuse of it, and an inconsistent use, which would have been an abandonment of a private right, and which gave to the demandant a right of action in trespass, and therefore a right of at least temporary possession until the land should be used for the purposes of the franchise. In this case, there has been no non-user, but a continued occupation of the land for the purposes of the franchise, which is inconsistent with a claim of the fee. The same occupation cannot be both under the franchise and in fee; if it is not under the franchise, but by disseisin of the fee, it must give to the demandant the right of possession. Being in the rightful possession and the actual use of the land for the purposes for which it was taken, and having the absolute right to determine the manner of occupation for such purposes, its occupation must be presumed to be in the exercise of that right. It is not until it substitutes another use for that given by its franchise, so that its possession of the land is wrongful, that its occupation can be referred to the claim of the freehold.     *Judgment for the tenant.*