LILLIE H. COIT v. OWENBY-WOFFORD COMPANY ET AL.

(Filed 30 May, 1914.)

**Railroads—Right of Way—Necessary Superstructures—Warehouse —Leases to Patrons—Benefits—Public Duties.**

The principles of law which permit a railroad company to judge of the necessity for the use of its right of way for the convenience of the company and in the furtherance of its corporate business, extends for like purposes to the erection of warehouses or superstructures thereon, and it may permit or lease this right to its patrons as such in consideration of benefits to be received from them in the routing of their freight arising from the use of such buildings as stores and warehouses, when not prejudicial to its other patrons or inconsistent with its duties as a public-service corporation.

APPEAL by plaintiff from *Carter, J.*, at January Term, 1914, of CHEROKEE.

Civil action to recover possession of a warehouse on the right of way or station grounds of the Louisville and Nashville Railroad, successors of the Atlanta, Knoxville and Northern Railroad Company.

On the trial it was shown that the plaintiff was the ultimate owner in fee of the land, and that the same had been previously condemned as a right of way of the Atlanta, Knoxville and Northern Railroad and now used and occupied as such by the Louisville and Nashville; that the former road, while same was under its control, leased a designated portion of the right of way or terminal ground for the purpose, to J. L. Smathers for a stated rent, who erected thereon a warehouse and used and occupied it for several years, when that firm leased or conveyed their rights ·in the same to the codefendant, the Owenby-Wofford Company, who in turn occupied and used the same under the terms of the lease till the building was torn down and removed at some time pending the controversy, the date of this occurrence not being fixed with exactness by the testimony.

The written lease, bearing date in 1900, purported to exact a rental of $12 per annum, ground rent, and contained the stipulation, among others (section 4), as follows:

"In further consideration of said lease, said party of the second part binds himself, his heirs and assigns, to make party of the first part his preferred line for the transportation of inbound and outbound merchandise to and from said warehouse during the existence of this lease and so long as party of the first part affords rates equal with those of the Southern Railway Company for like service. By preferred line is meant the routing of shipments so as to give party of the first part the preference on all competitive business by the longest haul practicable within the rates at the time in force."

As to the use of the property under the lease, J. L. Smathers, witness for defendant, testified, among other things: "We were there in the produce business, tan-bark shippers and wholesale grocery business, and used it for receiving and shipping goods. It was built with reference to our business." And further: "My contract for the erection of this warehouse is in writing; I turned over my copy of it to my codefendant. We used that warehouse for the private business of the J. L. Smathers Company; we used it for receiving and shipping freight, for the wholesale grocery business; the private business of our corpo-

ration. There was another freight room where the general public was served. There was an agreement for rent at $12 per year to be paid by us to the road. I did not pay it. As well as I remember, we paid it the first year. After that, it occurs to me that the management changed, and possibly it escaped their attention. They never did call on us for it. Owenby-Wofford Company succeeded us 1 March, four years ago. I turned over the contract to Owenby-Wofford Company. We used that building without paying rent for eight years, as I recollect; I might be wrong. I went altogether according to the lease I had from the A. K. and N. Railway."

There was further evidence tending to show that a fair rental for the warehouse in question was $40 per month.

At the close of the testimony, on motion, there was judgment of nonsuit, and plaintiff excepted and appealed.

*M. W. Bell and Dillard & Hill for plaintiff.*

*J. D. Mallonee, Witherspoon & Witherspoon, and E. B. Norvell for defendant.*

HOKE, J. The decisions of this State are to the effect that, in condemning a right of way, under ordinary proceedings, the railroad acquires an easement in the property, to be held and used as the necessities and well ordered management of the road may require, and that the company authorities are made the judges of the extent and necessities of this use. *R. R. v. McLean,* 158 N. C., 498; *Earnhardt v. R. R.,* 157 N. C., 358; *R. R. v. Olive,* 142 N. C., 273.

The cases further hold that, to the extent that the land covered by the right of way is not presently required for the purposes of the road, the owner may continue to occupy and use it in a manner not inconsistent with the full and proper enjoyment of the easement. *R. R. v. McLean, supra; Lumber Co. v. Hines Bros.,* 126 N. C., 254; *Sturgeon v. R. R.,* 120 N. C., 225. In the practical application of these recognized principles, here and elsewhere, it is very generally held that, while a railroad company may not use or license the use of its right of way or depot grounds for purposes strictly individual or private, it may erect

thereon any and all buildings and superstructures reasonably required for the convenience of the company as a corporation and in promotion and furtherance of its corporate business; and what it may do for itself and for like purpose, it may permit or license to its patrons to the extent that it does not hinder or interfere with the proper performance of its duties to the public.

In the well considered and learned brief of defendant's counsel we were referred to numerous decisions to the effect that railroad companies could not be held for trespass on the rights of the owner in erecting or permitting the erection on its right of way and in furtherance of the company's business, coal chutes, sheds, elevators, platforms, and conveniences of all kinds affording facilities for receipt and shipment of freight, such as lumber yards, stock yards and pens, storage-houses, etc., and even hotels and boarding-houses when carried on for the accommodation or benefit of passengers and company employees, an instance of which occurs in our own reports in *Gudger v. R. R.*, 116 N. C., 481, and see, also, *Anderson v. Interstate Manufacturing Co.*, Iowa, 132 N. W., 152, reported with an instructive note in 36 L. R. A. (N. S.), at page 512; *Gurley v. Minneapolis Elevator Co.*, 63 Minn., 70; *Pierce v. R. R.*, 141 Mass., 481; *Hartford Ins. Co. v. Chicago and Mil. R. R.*, 175 U. S., 91; *Grand Trunk Ry. v. Richardson*, 91 U. S., 468; *Ill. Central v. Wathen*, 17 Ill. App., 580.

In *Grand Trunk Ry. v. Richardson, supra,* Associate Justice Strong, delivering the opinion, said: "It is not doubted that the defendant might have erected similar structures on the ground on which the plaintiffs' buildings were placed, if in its judgment the structures were convenient for the receipt and delivery of freight on its road. Such erections would not have been inconsistent with the purposes for which its charter was granted. And if the company might have put up the buildings, why might it not license others to do the same thing for the same object, namely, the increase of its facilities for the receipt and delivery of freight?" These authorities and the principle which they uphold and illustrate are in full support of his Honor's judgment awarding a nonsuit, for it appears, by correct inter-

pretation of the only testimony relevant to the question, that, while the user of the warehouse was restricted to the private business of the lessees, its chief and controlling purpose was to afford facilities for these lessees, as patrons of the road, in the storage, receipt and shipment of freight.

There is no error, and the judgment of nonsuit must be
Affirmed.