LESTER J. SPARROW AND EDITH J. SPARROW v. DIXIE LEAF TO-
BACCO COMPANY, INC., AND THE ATLANTIC AND NORTH CARO-
LINA RAILROAD COMPANY, AND ATLANTIC AND EAST CAROLINA
RAILWAY COMPANY.

(Filed 8 November, 1950.)

**1.  Easements § 5:  Eminent Domain § 26—**

A railroad company's power to condemn a right of way is for the benefit
of the general public, and the easement thus acquired is limited to use for
any purpose in furtherance of or incidental to its business as a common
carrier, but its use of the land for nonrailroad purposes is outside the scope
of its easement and imposes an additional burden for which the owner of
the fee has not been compensated.   Sec. 27, Chap. 136, Laws 1852. ᐟ

**2.  Same—**

The extent and method which its right of way is necessary to be used
for railroad purposes rests in the sound discretion of the railroad com-
pany, but a declaration by the company that a proposed private use is
necessary for railroad purposes does not make it so.

**3.  Same—**

A railroad company may permit third persons to use its right of way
when such use is primarily for the benefit of the railroad company as a

common carrier, even though incidental benefits flow to the private user, but it may not lease a part of its right of way to a private business for a nonrailroad use merely because such business is a customer, or potential customer, and such use tends incidentally to enhance the expectation of additional freight business.

**4. Same—**

A railroad company leased a part of its right of way to a tobacco company for the purpose of conducting a general tobacco storage and curing business, without contractual obligation on the part of the lessee to ship over the line of the railroad company. The tobacco company used the land to extend its storage facilities in furtherance of its business. Its buildings did not afford shipping facilities, but it trucked its merchandise from its warehouse to the railroad loading platform. *Held:* The use of the leased property was not in furtherance of the railroad's business as a common carrier.

**5. Estoppel § 6c—**

Mere knowledge and observation by the owner of the unauthorized use of his land by third parties in erecting and maintaining buildings thereon does not estop the owner on the ground of laches from maintaining an action in ejectment.

**6. Adverse Possession § 13b—**

The owner of the fee is not barred from maintaining an action in ejectment against a railroad company or its lessee to recover that part of the right of way used for nonrailroad purposes until the expiration of twenty years. G.S. 1-40.

**7. Adverse Possession § 10—**

G.S. 1-51 has no application to an action in ejectment by the owner of the fee to recover that part of the right of way used by the railroad company or its lessee for nonrailroad purposes.

**8. Limitation of Actions § 6b—**

An action in ejectment by the owner of the fee to recover that part of the right of way used by the railroad company or its lessee for nonrailroad purposes is not subject to the three year statute of limitations, since it is not an action in trespass for damages.

Appeal by plaintiffs from *Parker, J.,* June Term, 1950, Lenoir. Reversed.

Civil action in ejectment.

The parties waived trial by jury, entered into a stipulation as to the facts, and agreed that the court should hear and determine the cause on the facts agreed. The stipulated facts are in substance as follows: The defendant Atlantic and North Carolina Railroad Company, hereinafter referred to as lessor road, owns a right of way or easement extending 100 feet on either side of its tracks from the center thereof, and specifically including the property in dispute, by virtue of Sec. 27, Chap. 136,

Laws 1852. The plaintiffs are the owners of the fee, subject to said easement, of the property in dispute. On 25 September 1935, defendant tobacco company acquired title to a tract of land adjoining said right of way and erected thereon tobacco storage warehouse buildings. On 27 July 1936, the lessor road leased to the tobacco company a part of its right of way adjoining said property, and the defendant tobacco company constructed upon the right of way so leased two storage warehouse buildings which were extensions of the building originally erected upon their property. In 1936 the lessor road constructed a sidetrack leading to said warehouse building, which track was used in servicing the said warehouse buildings from 1936 to June 1949, at which time the said sidetrack was taken up and removed, the sidetrack being removed because the tobacco company, for causes satisfactory to itself, had abandoned same. On 1 September 1939, the lessor road leased its land, business, and existing contracts to the defendant Atlantic and East Carolina Railway Company, and said last-named railroad company is operating said line. On 5 April 1944, the plaintiff Lester J. Sparrow acquired title to a tract of land which includes that part of the right of way leased by the lessor road to the tobacco company, subject to the easement or right of way of the lessor road.

The warehouses erected by the defendant Tobacco Company are used for the storage of tobacco purchased on the Kinston tobacco market and for the storage of tobacco purchased by the Tobacco Company and shipped into Kinston from points in South Carolina and Georgia, for processing and storage and reshipment. That part of the tobacco coming from other points is shipped partly by truck and partly by rail. These buildings have been so used for the storage, processing, and shipment and reshipment of tobacco continuously since 1936-1938. Prior to the erection of buildings on the railroad right of way, shipments made by the Tobacco Company were divided between the two railroads serving Kinston, and since the construction of said warehouses all the tobacco purchased by the Tobacco Company stored and processed in said buildings has been shipped over the lessor road and the operating railway, except in those cases where the tobacco company failed to give shipping instructions. Since the construction of said warehouses, the tobacco company has averaged shipping over the line of the defendant railroads 250 carloads per year, yielding a net revenue to said railroads of $10,000 per year. No protest or objection to the construction of said buildings or the occupancy thereof was made by plaintiffs or their predecessors in title prior to January 1949. The defendant railroad companies received the rentals from said property from the date of the lease until the present time.

The lease agreement between the tobacco company and the lessor road contains the following: "PURPOSE. 3. The said premises shall be used for conducting a general tobacco storage and curing business." This is the sole purpose stipulated in the lease. It contains no provision obligating the tobacco company to ship any part of its tobacco, either incoming or outgoing, over the defendant railroad.

Upon the facts stipulated, the court below concluded that the lease to the tobacco company and the use of the two storage warehouse buildings erected upon the right of way pursuant to said lease "was and is for railroad purposes within the meaning of Section 27, of Chapter 136, of the Laws of 1852, and that, therefore, the plaintiffs are not entitled to recovery." It thereupon entered judgment that the plaintiffs take nothing and that the defendants go hence without day. Plaintiffs excepted and appealed.

*Albert W. Cowper for plaintiff appellants.*

*R. Mayne Albright for defendant Atlantic and North Carolina Railroad Company, appellee.*

*Allen, Allen & LaRoque, Charles H. Taylor, and Warren S. Perry for defendants Dixie Leaf Tobacco Company, Inc., and Atlantic and East Carolina Railway Company, appellees.*

BARNHILL, J. The lessor railroad acquired its right of way under and by virtue of Sec. 27, Chap. 136, Laws 1852. It thus acquired and possesses nothing more than an easement for railroad purposes, with the right of actual possession of so much thereof as is necessary for the operation of its road and to carry on its business as a common carrier of freight and passengers with dispatch and convenience. *R. R. v. Sturgeon,* 120 N.C. 225; *Shields v. R. R.,* 129 N.C. 1; *R. R. v. Olive,* 142 N.C. 257; *Coit v. Owenby,* 166 N.C. 136, 81 S.E. 1067; *R. R. v. Manufacturing Co.,* 229 N.C. 695, 51 S.E. 2d 301; Anno. 94 A.L.R. 525, 149 A.L.R. 380.

It may devote the right of way to any use which is indispensable to, or which will facilitate the fulfillment of, the objects of its corporate existence as a common carrier, or which is reasonably in aid of those purposes. 44 A.J. 338. Ownership of the easement carries with it the right to use the property within the bounds of the right of way for any purpose the primary object of which is the furtherance of the business of the railroad. So long as the use to which the easement is subjected comes within this rule, the owner of the servient estate has no cause to complain, for the grant of the easement was for such purpose and constitutes a part of the dominant estate. The use, however, must be reasonably necessary for or convenient to the operation of the railroad. *Hodges v. R. R.,* 196 N.C. 66, 144 S.E. 528; *R. R. v. Manufacturing Co., supra.*

On the other hand, the railroad company possesses no right or authority to use or to let the property for private or nonrailroad purposes. Anno. 94 A.L.R. 524, 528, 535, 149 A.L.R. 380. It cannot erect or permit the erection of warehouses, factories, and the like, not necessarily connected with the use of their franchise, within the limits of their right of way. When property is taken for railroad purposes, the fee remains with the owner and, outside of the authorized use, the proprietary right is in the original owner. *Lyon v. McDonald,* 14 S.W. 261; *Bond v. Ry. Co.,* 160 So. 406; *Lance's Appeal,* 55 Pa. 16; *Rock Island & P. R. Co. v. Brewing Co.,* 51 N.E. 572; Anno. 94 A.L.R. 528, 149 A.L.R. 378.

The reason underlying the rule which prohibits the use of the railroad right of way for nonrailroad purposes or purposes which are not primarily in furtherance of the business of the corporation as a common carrier is twofold:

(1) A railroad is a *quasi*-public corporation and its right to acquire a right of way by condemnation is founded upon the fact that the property thus acquired is to be used for the benefit of the general public. It is acquired for the public use and so its use must be confined to that purpose.

(2) To subject the property to an additional use of a private nature, not incident to or in furtherance of the operation of the railroad, imposes on the servient estate an additional burden for which the easement was not acquired and the owner has not been compensated.

It is argued here that the uses to which the right of way may be subjected rest within the sound discretion of the corporate authorities. But the rule is not quite so broad. While the railroad is the judge of the necessity of extending the use of its right of way, the proposed additional use must be incidental to or in furtherance of the business of the railroad as a common carrier—a *quasi*-public use. Only so long as the use is in furtherance of the business of the railroad does the extent of that use rest with the railroad authorities, and the mere decision of the officers of the railroad that a proposed use is a railroad use does not make it so.

The only limit upon the use which the railroad company may make of the land within the bounds of its easement is that it shall be a use authorized by its incorporation as a common carrier. Within that limit the manner in which the land shall be used or occupied is in the discretion of the corporation. *R. R. v. Lissenbee,* 219 N.C. 318, 13 S.E. 2d 561; *Peirce v. R. R.,* 141 Mass. 481. The right to use, however, is definitely limited to railroad purposes. Any use of the land for other purposes is not protected by its authority. *Anderson v. Interstate Mfg. Co.,* 36 L.R.A. 512; *Lyon v. McDonald, supra.*

When the use by third parties is primarily for the benefit of the railroad as a common carrier, then it is for railroad purposes, even though

incidental benefits flow to the private user. On the other hand, if the use is primarily private in nature, the fact that the railroad is incidentally benefited thereby, through the acquisition of a new customer or increased shipments, does not convert it into a railroad use. *Coit v. Owenby, supra; Sturgeon v. Wabash Ry. Co.,* 17 S.W. 2d 616; *In re Chicago & N. W. Ry. Co.,* 127 Fed. 2d 1001; Anno. 94 A.L.R. 928; 149 A.L.R. 378.

Every new or enlarged business within a municipality served by a railroad enhances the probability of additional freight business for the railroad. But if the mere fact the user of railroad property is a customer, or potential customer, and the use tends incidentally to enhance the expectation of obtaining additional freight business, converts the use for private business into a use in furtherance of the business of the railroad as a common carrier, the railroad could let its right of way to all types of private enterprises to the complete exclusion of the owner of the fee. *Lance's Appeal, supra; Rock Island & P. R. Co. v. Brewing Co., supra,* Anno. 149 A.L.R. 378, 94 A.L.R. 529.

The concrete question, therefore, is whether the use of the building in question as a tobacco redrying and storage plant is, under the facts agreed, a misuse of the railroad company's easement in the land occupied by the said buildings.

A careful appraisal of the facts in the light of the controlling principles of law to which we have referred leads to an affirmative answer.

The tobacco company was already engaged in the business of processing and storing tobacco at the time it acquired the lease in question. Tobacco is stored for the purpose of curing over a period of years. Its plant was located on property adjoining the railroad right of way. It leased the property in question for the purpose of enlarging and extending its plant by the erection of an additional storage warehouse. The purpose for which the property was leased to it is spelled out in the lease contract: "The said premises shall be used for conducting a general tobacco storage and curing business." The tobacco company did not, as in *Coit v. Owenby, supra,* and *Anderson v. Interstate Mfg. Co., supra,* contract, as a part of the consideration for the lease, to ship its merchandise, or any part thereof, over the line of defendant railroad. It is free to patronize, or to withhold its patronage from, the lessor line. All the railroad acquired in this respect was the enhanced probability of additional freight business.

The tobacco company is engaged in private business in no way connected with the railroad. The buildings on the right of way were erected in furtherance of that business and not chiefly to afford facilities for the lessee as a patron of the railroad to receive, store, and reship freight over the lessor's line. It receives its merchandise for processing and storage purposes and, as other customers of the railroad, it has to truck its mer-

chandise from the warehouses to the railroad loading platform. So then, the warehouses are not intended primarily for the storage of tobacco for reshipment or to furnish the tobacco company with facilities for the shipment thereof. *Coit v. Owenby, supra.*

A careful examination of the cases from other jurisdictions to which our attention is directed by counsel discloses that those which are seemingly at odds with the conclusion here reached are factually distinguishable. We need not undertake to point out the distinguishing features here. Suffice it to say that these and many other cases are to be found in the notes in 36 L.R.A. (N.S.) 512, and in the A.L.R. annotations herein cited.

The defendants plead estoppel by laches. They allege that plaintiffs and their predecessors in title had actual knowledge and frequent observation of the use of the buildings on their premises for a period of fourteen years and yet they did not warn the defendants they had built on and were using plaintiff's land. They contend that this laches on the part of plaintiffs now estops them from claiming title to the land or denying the title of defendants. But these facts are not sufficient to work an estoppel. *Ramsey v. Nebel,* 226 N.C. 590, 39 S.E. 2d 616.

The possession of the defendant tobacco company is the possession of the railroad and the railroad possesses only an easement. They have not asserted possession adverse to plaintiff's ownership of the servient estate. But even if it be conceded that their possession has been adverse, they have no color of title. Hence it takes twenty years within which to ripen their title. G.S. 1-40.

But, they assert, a different rule applies here—G.S. 1-51 is controlling. However, that section pertains to the acquisition of a right of way and limits the right of the owner of the fee to maintain an action for damages resulting from the taking of the right of way easement. It in no way affects the rights of the owner in respect to the fee, subject to the easement, and that is what is involved here. Plaintiffs make no claim adverse to the right of the railroad in the easement or its right to use the easement for railroad purposes. Their claim rests squarely on the allegation that the use by the defendants is for a nonrailroad purpose.

Nor does the three-year statute of limitations apply, for this is not an action in trespass for damages. It is an action in ejectment for the possession of the premises.

For the reasons stated the judgment below is

Reversed.