**RIO BRAVO OIL COMPANY et al.,**
**Appellants,**

v.

**HUNT PETROLEUM CORPORATION**
**et al., Appellees.**

No. 399.

Court of Civil Appeals of Texas.

Tyler.

March 27, 1969.

Rehearing Denied April 24, 1969.

Life & Bolding, Jack T. Life, Athens, Knight, Prappas, Rowland & Caldwell, W. J. Knight, Houston, for appellants; Graves, Dougherty, Gee, Hearon, Moody & Garwood, Robert J. Hearon, Jr. and William L. Garwood, Austin, W. St. John Garwood, Austin, of counsel.

Moore & Holland, Jack Holland, William H. Kugle, Jr., Athens, Johnston & Johnston, Luther C. Johnston, Palestine, George K. Gilbert, Bartlesville, Okl., W. H. Cathey, Robert B. Payne, Strasburger, Price, Kelton, Miller & Martin, Leo J. Hoffman, Kilgore & Kilgore, James A. Kilgore, Shank, Irwin, Conant & Williamson, Ralph B. Shank, Dallas, Ramey, Brelsford, Flock, Devereux & Hutchins, Tom B. Ramey, Jr., Frank L. McClendon, Smith & Smith, Kelley Smith, Tyler, Stone & Stone, Emerson Stone, Jr., Jacksonville, for appellees.

Prentice Wilson, Dallas, for appellees, W. L. and John T. Pickens.

Cox & Nichols, Paul B. Cox, Rusk, for appellees, Grover Cleveland Wylie and Mamie Wylie Jordan.

MOORE, Justice.

This is an appeal from a summary judgment. Plaintiffs, Rio Bravo Oil Company and Southern Pacific Company, brought suit in trespass to try title against defendants, Hunt Petroleum Corporation, et al, for title and possession of 25.042 acres of land situated in the Isaac W. Burton Survey in Henderson County, Texas. Plaintiffs alleged in their petition that Southern Pacific Company, successor to Texas & New Orleans Railroad company, is the owner of fee simple title to said lands including the oil, gas and minerals in, on and under and that may be produced therefrom subject only to the provisions of an oil and gas lease executed and delivered by Southern Pacific Company, as lessor, to Rio Bravo Oil Company, as lessee; and that plaintiff, Rio Bravo Oil Company, is the owner of the oil, gas and mineral leasehold estate evidenced by said lease. The petition further alleged (1) that on the 21st day of August, 1964, defendants unlawfully entered into and dispossessed them of such premises and withheld from them the possession thereof; (2) that defendants are asserting unfounded claims of title and possession to plaintiffs' said title to the above described premises, casting clouds upon plaintiffs' title; and (3) that the plaintiffs had matured title under the Three, Five, Ten and Twenty-Five year Statutes of Limitation. The prayer was for judgment against all defendants for title and possession of the lands, the quieting of their title, and for costs.

The petition further discloses that the land in question is engaged in the production of oil and that as a result has been pooled and unitized with adjoining lands for conservation purposes. For this reason, all parties to the unitization and pooling agreement were named as party defendants. In all, there are 694 party defendants.

Defendant, Hunt Petroleum Corporation, along with numerous other co-defendants, answered the suit with a general denial and a plea of not guilty. A large number of defendants defaulted. Some filed disclaimers. As to those who defaulted, plaintiffs were granted an interlocutory default judgment.

The matter came on for hearing before the trial court on the motions for summary judgment, filed by both plaintiffs and defendants. Although plaintiffs' motion was filed subsequent to that of the defendants, for convenience we will first undertake to discuss the contents of the plaintiffs' motion. The parties will be referred to as they were in the trial court.

Plaintiffs' motion for summary judgment, filed on August 20, 1966, alleges that in accordance with Rule 166-A, Texas Rules of Civil Procedure, plaintiffs were filing their motion for summary judgment against all party defendants named in plaintiffs' first amended original petition and alleges that plaintiffs are entitled to recover judgment for title and possession to the land described in the petition against each of the said defendants respectively, and for removal of the respective claims of title to said lands based upon the pleadings, affidavits, documents and records therein set forth and referred to, as to which there is no genuine issue of material fact. Specifically, appellants sought judgment against (1) all defaulting defendants and those defendants who disclaimed, and (2) all defendants claiming title under J. L. Dickerson and wife, Ida E. Dickerson. The motion specifically sets forth plaintiffs' chain of title. It shows that plaintiffs base their claim of title upon a conveyance from J. L. Dickerson and wife, Ida E. Dickerson, dated January 18, 1901, to Texas & New Orleans Railroad Company. In addition to their claim of record title, plaintiffs filed affidavits in support of their limitation title. The prayer was for judgment awarding plaintiffs fee simple title to all the lands described by the Dickerson deed as against each and all defendants named therein.

The Dickerson conveyance, upon which plaintiffs rely, was attached to the motion and reads, in part, as follows:

"THE STATE OF TEXAS

"COUNTY OF HENDERSON

"Know all men by these presents, that *we, J. L. Dickerson joined by his wife, Ida E. Dickerson* of the County of *Henderson,* State of Texas, in consideration of *One & No/100 Dollars* cash paid by the Texas & New Orleans Railroad Company, a corporation created under the laws of the State of Texas, and having its domicile in the city of Houston, Harris County, Texas, the receipt of which is hereby acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, sell and convey unto the Texas & New Orleans Railroad Company, its successors or assigns, a right of way for the Texas & New Orleans Railroad, over and across the following described tract of land in *Henderson* County, Texas;

"Being a part of the I. W. Burton survey described by metes and bounds as follows viz:

(Here follows the description of a tract of land 50 feet in width on each side of the center line of the Texas & New Orleans Railroad as now located on the ground, commencing on the East Line of the I. W. Burton Survey and running in a Westerly direction, a distance of 4,260 feet and then expanding to a width of 100 feet on each side of the center line some 300 feet still further West ending with or slightly West of the West Line of the I. W. Burton Survey, containing 11–268/1000 acres, more or less.)

"Also the following land for station grounds described by metes and bounds as follows viz:

(Here follows the description of a tract 100 feet wide and 300 feet in length running along the *South* line of the foregoing tract and being contiguous to the 4,260 feet section thereof.)

"Also another tract the same survey * * *

(Here follows the description of a tract 100 feet in width and 300 feet in

length running along the *North* boundary of the tract, the hereinabove first described tract, and is contiguous to the 4,260 foot section thereof, reciting that both tracts contain 13–774/1000 acres of land, more or less.)"

Following the description, the parties inserted this provision:

"This conveyance is made upon the condition that the said Texas and New Orleans Railroad shall upon the construction and operation of said Railroad construct a side track or side tracks and establish a flag station at which all regular freight or passenger trains, except express trains shall stop on signal for the receipt and delivery of freight and passengers, and that a depot suitable for the accommodation of freight and passenger business shall be established and maintained upon the said lands as soon after the construction and operation of said Texas and New Orleans road as the business at said station shall be deemed by said Texas and New Orleans Railroad Company to be of sufficient volume to warrant the establishment of said depot. It is agreed and understood however by the grantor herein that the foregoing does not in any manner apply to the right of way for said Texas and New Orleans Railroad as heretofore described and this conveyance as to said right of way is absolute and unconditional.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Texas & New Orleans Railroad Company, for the purposes aforesaid forever."

A printed form was used. The italicized parts were in handwriting.

Plaintiffs' claim of limitation title was based upon affidavits, exhibits and other documentary evidence showing that for more than half a century the railroad company, directly and through its tenants, has had continuous, exclusive and actual possession of the surface estate of the lands made the basis of this suit, timely paying taxes thereon, without adverse suit to recover the same. The affidavits show that, beginning in 1904 and continuing without interruption to the present time, the Texas & New Orleans Railroad Company and the Southern Pacific Company, as its successor, used the land for right-of-way as well as for a station house and side tracks. Through their various tenants the railroad company also used and occupied portions of the land in question for commercial, industrial and agricultural purposes. In each instance the tenants openly and notoriously took and maintained exclusive possession of the land covered by their leases from the railroad companies and erected buildings for lumber yards, vegetable sheds, pickle plants, seed houses, rock crushers and other similar structures which necessarily excluded the Dickersons and their successors in title to those portions of the three tracts covered by the improvements; that from 1909 through 1922 and again in 1932 and continuing down to the present time, various portions of the land in suit have been devoted to grazing, pasturing and agricultural use by the tenants of the railroad company who enclosed and maintained the same with fences sufficient to turn cattle and have thus openly excluded the Dickersons and their successors in title from those portions of the tract enclosed by the fences for a period of more than twenty-five years.

Defendant Hunt Petroleum Corporation's motion for summary judgment, filed on April 21, 1966, was a joint motion filed by 54 of the named defendants. The motion recited that it was also being filed for the benefit of *all* other defendants. The motion recites in part as follows:

"Whether the Plaintiffs *chain* their title from the sovereignty of the soil or from a common source, one of the instruments comprising Plaintiff's chain of title is instrument dated January 18, 1901, from J. L. Dickerson and wife, Ida E. Dickerson, to Texas & New Orleans

Railroad Company, filed for record April 16, 1901, and recorded in the Deed Records of Henderson County, Texas, in Volume 47, page 137, a true and correct copy of which recorded instrument is attached hereto and marked EXHIBIT A;

\* \* \* \* \* \*

"That said instrument comprising a link in Plaintiffs' chain of title does not convey the fee simple title to the lands therein described (which are the same lands described in Plaintiffs' First Amended Original Petition), but clearly shows on its face that Plaintiffs' predecessor in title acquired by virtue of said instrument only a right of way over and across the land therein described.

"That since Plaintiffs' predecessor in title acquired only a right of way under and by virtue of said instrument and acquired no mineral interest in said land, it could not have conveyed any such interest to the Plaintiffs herein."

Defendant, Hunt Petroleum Corporation, and those joining in the motion, prayed that the court enter and grant them and the other defendants a summary judgment upon the cause in its entirety and for judgment decreeing that the plaintiffs take nothing by reason of their suit, other than that the plaintiff, Southern Pacific Company, be granted a right-of-way over and across the land sued for. Similar motions for summary judgment were filed by other defendants.

After a full hearing on the various motions for summary judgments, the trial court (1) set aside the interlocutory judgments against the defendants who defaulted; (2) denied the motion for summary judgment of the plaintiffs EXCEPT that plaintiff, Southern Pacific Company, was quieted in its title to the right-of-way easement, over and across the land, against all defendants; (3) entered a summary judgment for all defendants; and (4) decreed that the plaintiffs take nothing against the defendants as to the plaintiffs' claim to the mineral estate in and to the land then in controversy without prejudice to the easement rights of the plaintiff, Southern Pacific Company, over and across said lands from which judgment and ruling of the court, plaintiffs duly perfected this appeal.

By the first Point of Error, plaintiffs assert that the instrument from J. L. Dickerson and wife, Ida E. Dickerson, to Texas & New Orleans Railroad Company, conveys the fee simple title to the three tracts of land described therein and that the trial court erred in holding that the instrument conveyed only an easement. Plaintiffs argue that the granting clause conveying a "right-of-way" is not applicable to either of the last two tracts mentioned in the instrument because they say that as to those two tracts, the instrument shows that the parties intended to convey the fee title "land" for a station house rather than a right-of-way. They say that since a station house was to be constructed on the land, it would be incongruous to say that the parties intended to convey a mere easement rather than the fee. Based upon this premise, plaintiffs contend that it must be presumed that by conveying title to the last two tracts lying on both sides of the railroad right-of-way proper, the parties must have intended the conveyance of fee title to extend to the center of the railroad right-of-way described as the first tract under the holding of Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391. Consequently, they argue that the instrument conveyed a fee simple title to all three tracts mentioned in the Dickerson instrument.

The judgment recites that the trial court was of the opinion and concluded that the instrument should be construed as conveying an easement only and not the fee simple title. We agree with the ruling made by the trial court.

■ It is the settled law of this state that, where the granting clause in a deed to a railroad company declares the purpose of a grant to be a right-of-way over and across a tract of land, it is a conveyance

of a mere easement in the property and not a conveyance of the fee simple estate therein. Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268; Penn v. Holland, (Tex.Civ.App.) 105 S.W.2d 351, writ ref.; Gulf Coast Water Co. v. Hamman Exploration Co., (Tex.Civ.App.) 160 S.W.2d 92. The same view has been expressed by the courts of other jurisdictions. 132 A.L.R. 142, and 6 A.L.R.3d 973.

█ In Penn v. Holland, supra, a similar granting clause was before the court. In that case the court pointed out that the operative language of the grant to the railroad company clearly related to a particular privilege appurtenant to the land, that is, " 'the right of way * * * feet in width, over, along, and through' it, thereby passing an easement only and not a fee-simple title;* * *." The same principle appears to be applicable here. The operative language in the granting clause in the Dickerson instrument recites a grant of a "right-of-way for Texas & New Orleans Railroad over and across the following described tract of land" being a part of the I. W. Burton Survey. It thus appears that the operative language of the grant relates only to the particular privilege appurtenant to all of the land therein described. To give the instrument the meaning that the grantor was conveying the fee simple title to either of the tracts described therein would require a complete change in the form of expression, which we are not permitted to do. It is well settled that when rights of the parties are fixed by the deed, such rights cannot be extended by construction. Jones v. Sun Oil Co., (Tex.Civ. App.) 110 S.W.2d 80, (writ ref.). It follows that the judgment of the trial court must be sustained.

By the second, third and fourth Points, the plaintiffs contend that the trial court erred in refusing to rule that the plaintiffs had established their title by virtue of their open, notorious and exclusive use and possession of the lands described in the Dickerson instrument under the Three, Five, Ten and Twenty-Five year Statutes of Limitation, and accordingly erred in failing to render summary judgment for the plaintiffs.

█ In view of our conclusion that the Dickerson conveyances amounted to nothing more than an easement, the Three year Statute of Limitation would not be applicable under the facts since plaintiffs had neither title nor color of title to the land. Article 5507, Vernon's Ann.Tex.St.; Hoerster v. Wilke, (Tex.Civ.App.) 140 S. W.2d 952. The Five and Twenty-Five year Statutes would likewise be inapplicable because plaintiffs neither had a deed to the land sued for nor a deed purporting to convey the fee simple title. Articles 5509 and 5519, V.A.T.S.; Smoot v. Woods, (Tex.Civ.App.) 363 S.W.2d 798. This brings us to the question of whether or not the plaintiffs, as a matter of law, established their title under the Ten year Statute (Art. 5510, V.A.T.S.). We have concluded that they did not.

█ A grantee under an instrument granting a right-of-way over and across the grantor's land makes his entry of the land in recognition of the owner's title and with the owner's permission. Without a repudiation of the owner's title and notice thereof visited upon the owner, such grantee cannot assert title by adverse possession. 2 Tex.Jur.2d, page 81, Sec. 20, Adverse Possession.

█ The conveyance of the right-of-way conferred upon the railway company the privilege of putting any and all parts of the 200-foot strip of land to all uses for which a right-of-way may be employed, under the law of this state, in the construction, maintenance and operation of a railway, and its possession for such purposes could not be disturbed even by the owner of the fee. Olive v. Sabine & E. T. Ry. Co., 11 Tex.Civ.App. 208, 33 S.W. 139. But having entered into possession of right-of-way under the instrument, the railroad's possession and occupancy is in

subjection to the recognized title. The railroad could not therefore perfect a claim of title under the Statute (Art. 5510) as against the true owners, without bringing to their notice a repudiation of the recognition, and of the assertion of an adverse claim. So, in order for the plaintiffs to prevail under the Ten year Statute of Limitation with respect to the fee, the evidence offered by them must conclusively show a repudiation and an adverse, hostile claim.

While no contention is made that the railroad company gave actual notice of repudiation, plaintiffs contend that the circumstances are sufficient to establish a repudiation and adverse claim as a matter of law. This brings us to the question of whether the acts and conduct of the railroad were sufficient to put the defendants on notice. Plaintiffs contend first that the fencing of the property, together with agricultural leases to strangers, was sufficient to establish notice of repudiation and adverse claim. We do not agree. The fencing of the right-of-way by the railroad was not an act disconnected from the use of the property for railroad purposes. It had a right to fence the right-of-way under the terms of Article 6402, V.A.T.S. to lessen its liability for killing or injuring livestock. See Galveston, H. & S. A. Ry. Co. v. McIver, (Tex.Civ.App.) 245 S.W. 463. Nor do we believe the leasing of the right-of-way to the various agricultural lessees was such an act so disconnected from the use of the property for railroad purposes as to indicate repudiation and adverse claim. The consideration for the leases was either nominal or partly in consideration for keeping the right-of-way clean. These obligations devolved upon the railroad as the owner of the easement over the right-of-way as provided by Article 6401, V.A.T.S.

Plaintiffs next contend that the letting by the railroad of the portion of the right-of-way to various lessees for the construction of buildings, seed houses, lumber yards, vegetable sheds, pickle plants and rock crushing machinery was sufficient to give notice to the defendants of a repudiation of the title and an adverse claim by the railroad to the fee. Article 6344, V.A. T.S. provides that railroad corporations "shall have the right to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery for the accommodation and use of passengers, freights and business interests, or which may be necessary for the construction or operation of its railway; * * *." Article 6341, V.A.T.S. provides that railroad corporations shall have the right "To purchase, hold and use all such real estate and other property as may be necessary for the construction and use of its railway, stations and other accommodations necessary to accomplish the objects of its incorporation, * * *." The evidence shows that most, if not all, of the lessees were customers of the railroad. As we view it, the conduct of the railroad in leasing the premises was in furtherance of the business of transportation of freight. The railroad had a right to erect similar structures itself on the grounds for such purposes. City of Knoxville v. Kaiser, 161 Tenn. 607, 33 S.W.2d 411. If the company could put up buildings, we see no reason why it could not license others to do the same thing for the same object. In either event, the construction of buildings for such purposes would not be contrary to the rights granted by the easement and would not therefore be sufficient to amount to notice of repudiation and adverse claim.

In our view all of the foregoing acts were consistent with the right under the conveyance. They were not hostile to the rights of the true owners and in our opinion they did not indicate a claim of the ownership in fee, but only of such right as was conveyed to them by the Dickerson instrument. Having acquired possession in subserviency to the owner of the fee, a clear and positive assertion of an adverse right, definitely brought to the knowledge of such owner, must be shown before any foundation can be laid for the operation of the statute. Peterson v. Holland, (Tex.

Civ.App.) 189 S.W.2d 94; Branch v. Central Trust Co. of Illinois, 320 Ill. 432, 151 N.E. 284. Thus, however long continued plaintiffs' possession may have been under these circumstances, it could not ripen into a title under the Statute of Limitation because plaintiffs and their predecessor in title did nothing more than use the land for the purposes for which it was taken. Plaintiffs' use was not wrongful in the sense that it invaded any right of the owners. Mere occupation and permissive use of land is not sufficient to afford the true owners notice of repudiation of title or adverse claim of the freehold. Peirce v. Boston & L. R. Corp., 141 Mass. 481, 6 N. E. 96; Peterson v. Holland, supra. The same principle was recognized in Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622, wherein the court said:

"* * * If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such ownership. * * *"

■ By the fifth and sixth Points, plaintiffs complain of the action of the trial court in setting aside the interlocutory judgments by default and refusing to enter final judgment in their favor against the defendants who defaulted. Plaintiffs contend that under Rule 799, Texas Rules of Civil Procedure, they were entitled to judgment against all of the defaulting defendants upon the pleadings without the necessity of offering any proof. Rule 799, supra, provides that in statutory actions of trespass to try title, default judgment may be granted against defendants who fail to answer, without the necessity of proof. An examination of the plaintiffs' petition shows that the cause of action alleged was not confined to the statutory action of trespass to try title, but also contains a plea of quiet title as well as a plea of limitation title. For this reason, we do not believe that Rule 799, supra, would be controlling or would have exclusive application. Atkinson v. Shelton, (Tex.Civ.App.) 160 S.W. 316. Rather we believe that Rule 240, T.R.C.P. would be applicable. Under

this rule all defaulting defendants are exempt from final judgment until such time as the case has been properly disposed of as to all answering codefendants. Boles v. Linthicum, 48 Tex. 220; Sindorf v. Cen-Tex Supply Co., (Tex.Civ.App.) 172 S.W. 2d 775. Hence, any title of the defaulting defendants would not pass or vest in the plaintiffs until such time as final judgment embracing the interlocutory judgments was entered. Even though plaintiffs were entitled to interlocutory judgment by default against some of the defendants, the rules do not relieve the plaintiffs of any proof of the facts alleged against the answering defendants.

■ Plaintiffs' motion for summary judgment was directed to all defendants. By filing the motion, plaintiffs invited the court to pierce the pleadings and determine from the documentary evidence offered whether or not the plaintiffs were entitled to a summary judgment against the answering defendants, as well as those who defaulted. They base their claim against the defaulting defendants upon the same title or right that they do against those that did appear, and none other. In order for the plaintiffs to prevail, it was incumbent upon them to demonstrate to the court that they had fee simple title to the land in question, as a matter of law. As pointed out above, plaintiffs failed to show fee simple title. Their proof established only an easement. Since plaintiffs totally failed to make out a cause of action for title against any of the defendants who answered, they likewise failed to establish a cause of action for title against those who failed to answer. Consequently, there was no basis upon which the trial court could have granted the plaintiffs a judgment against any of the defendants for fee simple title. Greer v. Bringhurst, 23 Tex.Civ.App. 582, 56 S.W. 947, (error refused); Atkinson v. Shelton, supra; Willoughby v. Jones, 151 Tex. 435, 251 S.W.2d 508; Arrington v. McCluer, 326 Mo. 1011, 34 S.W.2d 67; 78 A.L.R. 938. It is fundamental that a District Court has the inherent right to

change or modify any interlocutory order or judgment down to the time the judgment on the merits becomes final. Rule 166, T.R.C.P.; Sneed v. Martin, (Tex.Civ.App.) 292 S.W.2d 891; Bachman Center Corporation v. Sale (Tex.Civ.App.) 359 S.W.2d 290.

Under the seventh Point, plaintiffs contend that the trial court erred in rendering judgment against the plaintiffs and in favor of the defendants who filed disclaimers. The argument is made under this point that plaintiffs were entitled to judgment against the disclaiming defendants regardless of plaintiffs' right to judgment against other co-defendants. We disagree.

■■■■■ A disclaimer is merely an estoppel against the party filing it and is not an affirmative grant of title to anyone. Thus, a disclaimer made by certain defendants in favor of plaintiff does not entitle the plaintiff to judgment against a non-disclaiming defendant where no showing is made that the disclaiming defendant had any title to the realty sued for; nor will plaintiff be entitled to a judgment against the disclaiming defendant in the absence of proof of title in him. 87 C.J.S. Trespass To Try Title § 66, p. 1181–1182; Jansen v. Kelley (Tex.Civ.App.) 206 S.W.2d 856, citing cases.

Under the eighth Point, plaintiffs contend that the trial court erred in rendering judgment in favor of the several defendants who failed to file cross motions for summary judgment, asserting that summary judgment is not authorized unless a party moves for such relief. The point is overruled.

■■■ The undisputed proof offered by the moving parties on the motion for summary judgment shows that plaintiffs had no title to the land but only an easement. Consequently, no issue remained to be determined upon a trial on the merits. This being the case, we hold that when on plaintiffs' motion for summary judgment the undisputed facts show that the plaintiffs

have no case, the court has power to grant a defendant a summary judgment even though the defendant made no cross motion for summary judgment. Local 33, International Hod Carriers, Etc. v. Mason Tenders, Etc., 2 Cir., 291 F.2d 496; International Longshoremen's Association, AFL–CIO v. Seatrain Lines, Inc., 2 Cir., 326 F.2d 916. This is but to say that had the case been tried upon the merits, the trial court would have been required to instruct a verdict for all defendants. This being true, judgment for these defendants was in order even though they made no cross motion.

We have carefully considered all remaining Points of Error and find them to be without merit.

The judgment of the trial court is affirmed.